Lake Shore and Michigan Southern Railway Company, Lessee of the Jamestown & Franklin Railroad Company, and the Jamestown and Franklin Railroad Company, Appellants, v. John A. Wiley, Mayor, and C. S. Pizer, J. W. Kerr, George H. White, Jr., J. R. Doolittle, Alfred Bowman, Jesse Williams, William H. Forbes, Harry Smith, George G. Brigham, I. H. Borland, and Thomas Algeo, Members of the City Council of the City of Franklin, and the City of Franklin.

*Railroads—Municipalities—Use of street—Equity.*

Where a railroad company occupies a street of a city, before a grade has been established, and the tracks prevent the proper drainage of the street, and interfere with the use of it by the public, and the railroad company offers to place the tracks in proper condition, conforming to the grade of the street when established, the city cannot compel the railroad company to grade the entire width of the street in advance of any action of its own.

*Railroads—Streets—Switches.*

A railroad company will not be enjoined from using a switch in a street, where it appears that the switch was only used for the purpose of moving cars to and from the company's yard and of receiving and delivering freight to points not usually reachable by the main line, and that this use on the average did not exceed once in a month.

Argued Oct. 12, 1899. Appeals, Nos. 158 and 159, Oct. T., 1899, by plaintiffs, from decree of C. P. Venango Co., Aug. T., 1895, Nos. 1 and 2, on bill and cross-bill. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Bill in equity for an injunction and cross-bill.

The bill, as amended, charges that the Lake Shore & Michigan Southern Railway Company, an Ohio corporation, but working under the authority of Pennsylvania, is operating the road of the Jamestown & Franklin Railroad Company, a Pennsylvania corporation, as lessee; that the Jamestown & Franklin Railroad Company constructed its track through the city of Franklin, occupying in so doing a portion of Buffalo street, in said city, lengthwise, from Ninth street to Fifth street, under

its legislative charter and its supplements and the general railroad law of February 19, 1849, permission having been given therefor by the borough (now city) of Franklin by three certain ordinances on June 8, 1863, October 19, 1863, and January 26, 1866, respectively; that the Lake Shore & Michigan Southern Railway Company has for many years used and enjoyed this track and maintained it at great expense, with the knowledge and consent of the city; that such track is necessary for the use of the railroad in the operation of its business; that the city of Franklin had recently passed an ordinance declaring said track a nuisance, requiring its removal forthwith, and threatening a removal by itself; that such a removal or obstruction would cause great damage and work irreparable injury to the plaintiffs.

The prayer was for an injunction restraining the defendants from removing, obstructing or interfering with the said track.

The answer practically admits most of the facts set forth in the bill and alleges, in avoidance thereof: that prior to the extension of the road to Oil City, Franklin was the terminus, and the track was built to the Allegheny river, a public highway; that after such extension the track from Ninth street ceased to be used as a main line and a portion, from Fifth street to the river, was abandoned and torn up, leaving the same terminating in a public street, without connections at that end; that the said track is not necessary for the use and enjoyment of the railroad company, and that but little has been expended in the maintenance thereof; that the same has become a nuisance and that its removal will not work irreparable injury to the plaintiffs.

The cross-bill alleges substantially the same as the answer, and in addition: that the said track is not on the grade of Buffalo street, but is in part on a high embankment, across which loaded teams cannot go except at cross streets; that the west side of the street is in part impassable, and the east side, in places, is hardly wide enough to permit two wagons to pass each other; that the track has been practically abandoned since 1870, is not properly kept up, and that proper provision has not been made for the passage of water under it; that cars are permitted to stand on the track and are occasionally loaded

and unloaded there; that the occupation of the street as aforesaid has become a public nuisance.

The prayer is (1) for an order directing the railway company to remove the track; or if that be denied (2) an order compelling them to place the track on the city grade of the street, fasten planks between and on the outside of the rails, and make proper culverts under the same to permit the passage of water; (3) an injunction restraining the company from permitting engines or cars to stand upon or be loaded or unloaded upon the said track on the said street, and (4) general relief.

The answer to the cross-bill, as amended, sets forth that the track was constructed as stated in the original bill; admits that a portion from Fifth street to the Allegheny river has been temporarily abandoned, and that the depots, platforms, etc., are distant 1,500 to 2,000 feet from Buffalo street on the north side of Ninth street, but denies that the track in controversy was ever abandoned, and avers that it constitutes a portion of the main line of railroad, and is actively in use for the receipt and delivery of freight from and to the company's tie yard and from and to other business concerns which have no immediate access to any other line of railroad. It admits that a portion of the track is not upon the grade of the street, but avers that it was laid to conform to the then existing conditions; and sets forth the company's willingness to conform to the grade of the street whenever that shall be established, referring to a previous offer to that effect. It also avers that the condition of the west side of Buffalo street is due to the neglect of the city, and not of the company. It denies that the company has ceased to use the track lawfully or to keep it in proper condition, or that it has become a nuisance, or that the city has power so to declare it.

CRISWELL, P. J., found the facts to be as follows:

1. The railroad track and street in question are within the limits of a tract of land located at the mouth of French creek, reserved to the use of the state, and surveyed and laid out into streets, alleys, inlots, outlots and out-tracts, and sold pursuant to the provisions of the Act of April 18, 1795, 3 Sm. L. 238, which provides that all the streets, lanes and alleys so to be laid out shall be and forever remain common highways; and

Buffalo street is one of the streets laid out and dedicated to public use pursuant to the provisions of said act, and is sixty feet in width.

2. The said track and street are also within the limits of what was formerly the borough of Franklin, a municipality incorporated by Act of the General Assembly, approved April 14, 1828, P. L. 376, which borough, with some additional territory, was, pursuant to the provisions of the Act of April 4, 1868, P. L. 693, incorporated as a city, under the style and title of the city of Franklin, the plaintiff herein, and it thereby succeeded to the rights, powers and duties of the said borough of Franklin.

3. The defendant, the Jamestown & Franklin Railroad Company, is a corporation organized pursuant to the provisions of a special Act of the General Assembly, approved April 5, 1862, P. L. 653, and authorized to build and construct a railroad from the borough of Jamestown, in the county of Mercer, to the borough of Franklin, in the county of Venango, with all the powers and subject to all the restrictions of the general railroad act of 1849, and by a subsequent act, approved March 9, 1863, P. L. 587, being a supplement to that of 1862, authorized to construct, equip and work branch or lateral railroads, not exceeding ten miles in length, from any part of their road, and for this purpose having all the powers, rights and privileges contained in their original charter.

4. By ordinance passed and approved January 29, 1866, the burgess and town council in form authorized the said railroad company to lay the track of its road along Buffalo street the whole length thereof from Union (now Ninth) street to the southeast limits of the borough and upon any one of the cross streets southeast of Union (now Ninth) street to the Allegheny river, and use such parts of the streets aforesaid for the main line of its road, with a single track, as the company might deem proper; provided that the said company should not obstruct the travel on any of said streets by leaving their cars, empty or loaded, standing thereon, nor obstruct the crossings of said streets, and providing also that the company in grading its said track should leave the street in good repair, and not unnecessarily obstruct the streets while grading the same.

5. The said company in 1867 built and constructed its road

to and within the limits of the then borough of Franklin, extending the same along Buffalo street where the same is now located, from a point immediately below and south of Ninth street to near Fifth street, where there was a turntable, repair shops, etc., with a branch or switch leading thereto. Shortly thereafter the road was extended down Buffalo street and across lots to the Allegheny river.

6. About the year 1870, under another charter, a road was built from Franklin across French creek and up the Allegheny river to Oil City, connecting with the track of the Jamestown & Franklin Railroad Company, above Ninth street and between Tenth and Eleventh streets, upon the completion of which the two roads were consolidated, and thereafter operated under the name of the Jamestown & Franklin Railroad Company, that part of the Jamestown & Franklin below the connection with the Oil City line being thereafter used, not as a part of the main line, but as a branch road or switch.

7. The depot and freight houses of the Jamestown & Franklin Railroad Company are, and, as we understand, always have been situated between Tenth and Thirteenth streets, a distance of from 1,500 to 2,000 feet northerly from the north side of Ninth street.

8. About the time of the consolidation mentioned, or shortly thereafter, the use of that part of the track of the Jamestown & Franklin Railroad Company, leading from a point in Buffalo street immediately above Fifth street to the Allegheny river, was discontinued and the track torn up. About the same time or soon thereafter the use of the turntable, or round house, and repair shops, etc., above Fifth street, was discontinued and the buildings and the tracks leading thereto were removed.

9. Since the removal of the track from Fifth street to the river and the discontinuance of the use of the turntable and buildings thereat, the track from Ninth street south, a distance of about 1,900 feet, has not been used as a main track, but has been used at occasional times for switching trains and for the delivery and receipt of carloads of freight at long intervals to and from different persons, the testimony indicating that the use for either purpose would not exceed on the average once in a month. In addition to this use it has been used for some five or six years, chiefly, however, since the commencement of

these proceedings, for the shipment of railroad ties, delivered and stacked at a point near Fifth street. The use mentioned in this paragraph has been with the knowledge and passive acquiescence of the city and abutting property owners.

10. All freight either received or delivered over the track in question is received from and delivered to cars standing in the street, there being no switches or freight yard or buildings connected with the track. Cars are occasionally allowed to stand thereon when not in use, while the extension of the track north of Ninth street is used for the storage of cars and other purposes.

11. From the point where the track enters upon Buffalo street near Ninth street to a point about midway between Eighth and Seventh streets the conformation of the natural surface of the ground is such that, in order to obtain a grade for the railroad, an enbankment was necessary in the street, the same, as constructed, being four and a half feet high at the highest point, and diminishing in height therefrom towards the points indicated. No grade for the street having been established by the city, and no filling having been done to any extent on either side of the track, it is not practicable to pass from one side of the track to the other, except at the intersections of the cross streets, where it is difficult if not dangerous to do so, and, except on the lower part of the street in question, there is no open driveway along the westerly side of the street, while that on the easterly side is narrow, rendering it difficult for teams to pass. There is not sufficient drainage for water under the track, resulting at times in the accumulation of water on the westerly side thereof, between Eighth and Ninth streets. As to this, however, the evidence indicates that the railroad company is not alone at fault.

12. The track in question is now and has been maintained practically in the same condition it was when first constructed, except that it has been neglected and become much out of repair, the ties being so decayed as not to hold the rails securely in place.

13. The burden of the complaint of the plaintiff is, not so much that the use of the track as now operated constitutes a nuisance, as that the place and manner of its construction constitute a nuisance.

14. The road was constructed, and, with the exception of it not being in good repair, is and has been maintained as such roads usually are constructed and maintained.

15. Just prior to the commencement of these proceedings, to wit: on March 8, 1895, the Lake Shore & Michigan Southern Railway Company, through its attorneys, proposed to place the track in question in proper condition, conforming to the grade of the street as established by the city, at any reasonable time the city might undertake the improvement of the street.

16. Except those having property opposite to the embankment in the street, none of the persons who became parties plaintiff in the cross-bill have suffered special damage other or different in character from that suffered by the public generally by the interference with the free use of the street, while a number of them have acquired title to their property since the construction of the railroad.

17. It does not appear whether or not the owners of any of the lots abutting on said street, where there has been an embankment made therein by the railroad company, collected or received from the company any damages by reason of such embankment having been made therein.

18. The Lake Shore & Michigan Southern Railway Company is the lessee of the Jamestown & Franklin Railroad Company, and is in charge of and operating the road of the latter company.

The court entered the following decree: That the Jamestown & Franklin Railroad Company and its lessee, the Lake Shore & Michigan Southern Railway Company, the defendants in the cross-bill, at their own proper cost, charges and expense, do place or cause to be placed its track upon the grade established by the city authorities of the said city of Franklin, as shown by the red line upon the profile map, marked exhibit "A," offered in evidence May 31, 1899, and filed herewith, between the point of intersection of said tracks with Buffalo street, in said city, immediately below or south of Ninth street, and the terminal of said track in said Buffalo street, at or near the northerly boundary of Fifth street, and grade or cause to be graded the whole width thereof, that part of Buffalo street aforesaid between the point of intersection of said track therewith immediately south of Ninth street and the point between Eighth and Seventh streets, where the grade established as aforesaid coincides

with the natural surface of the ground; that they do further, at their own proper cost, charges and expense construct and place under and across said street, between the points last designated, such sewers as shall be necessary to carry off and prevent the accumulation of any water reaching the upper or westerly side of said street, the said sewers and grading to be constructed and done under and pursuant to the direction and supervision of the proper city authorities or the engineer of said city; and the said track to be so constructed and laid as to permit, as nearly as practicable, consistent with the maintenance and use thereof, the free and unobstructed use by the public of said street, by crossing or recrossing the same with teams, wagons, vehicles or otherwise, at all places occupied by the said track; that the said Jamestown & Franklin Railroad Company, and its lessee, the Lake Shore & Michigan Southern Railway Company, their officers, agents and employees, be and the same are hereby forbidden and enjoined from using or occupying said part of its track lying upon Buffalo street, between Ninth and Fifth streets, for the receiving or discharging of passengers upon or from its cars or using the said part of their said road for the storage of cars or to allow cars to stand upon the track of said road between the points designated; that upon the failure of the said Jamestown & Franklin Railroad Company or its lessee, the Lake Shore & Michigan Southern Railway Company, to comply with the requirements of this decree by placing the said track upon grade, and grading the said street as hereinbefore required, and by constructing proper sewers as aforesaid, within forty days after proper service upon them of this decree, the said city of Franklin may cause the said track, ties and all property connected therewith upon the said street between the ulterior points hereinbefore mentioned to be wholly removed therefrom; that the temporary injunction heretofore granted to restrain the said city of Franklin, its officers, agents, employees and servants, from entering upon or in any way interfering with the track of the Jamestown & Franklin Railroad Company or its lessee, the Lake Shore & Michigan Southern Railway Company, in the city of Franklin, Venango county, Pennsylvania, located and situate between the north side of Ninth street and the north side of Fifth street, and lying within and upon Buffalo street, in said city of Franklin, and from tak-

ing down, removing, destroying or in any way interfering with said railroad track or grade thereof on Buffalo street, within the limits above mentioned, except as authorized and permitted by the terms of this decree, be and the same is hereby made perpetual, and that the Jamestown & Franklin Railroad Company and the Lake Shore & Michigan Southern Railway Company, lessee, pay one half of the costs herein, and the city of Franklin pay one half the costs herein.

*Error assigned* was the decree of the court.

*John O. McCalmont* and *James Denton Hancock*, with them *Bryan H. Osborne*, for appellants.—In this case, apart from alleged injury to the public, there is not a charge in the cross-bill which alleges any special injury to the plaintiffs, not a scintilla of evidence to show any special injury to the plaintiff or to any person residing in its limits. All the charges and evidence, when carefully analyzed, relate to alleged violations or abuse of the defendant's franchise. This was a franchise granted for a public purpose to a public corporation. That under such circumstances the court below could not grant a decree in favor of the plaintiffs in the cross-bill is made evident by decisions so numerous and familiar that, without comment, we merely give a partial list of the cases: Cumberland Valley R. R. Co.'s App., 62 Pa. 218; Buck Mountain Coal Co. v. Lehigh Coal & Nav. Co., 50 Pa. 91; Com. v. Burrell, 7 Pa. 34; Murphy v. Farmers' Bank of Schuylkill County, 20 Pa. 415; Meckling v. Kittanning Bridge Co., 1 Grant, 416; Yost v. P. & R. R. R. Co., 29 Legal Int. 85; Gold v. City of Philadelphia, 115 Pa. 184; Morris & Essex R. R. Co. v. Prudden, 20 N. J. Eq. 530.

We have here absolute authority to make an embankment in a street, granted in the act, and especially confirmed by the proviso, which selects excavations and embankments only as the subjects for damages. The exercise of the power is left to the discretion of the officers of the company. The grantees of such a franchise have the same power that existed in the state, and may exercise it subject only to such restrictions as are imposed in the grant: New York & Erie R. R. Co. v. Young, 33 Pa. 175; Com. v. Fisher, 1 P. & W. 462; Morris & Essex

R. R. Co. v. Prudden, 20 N. J. Eq. 530; Merchants' Union Barb-Wire Co. v. Chicago, etc., R. R. Co., 43 Am. & Eng. R. R. Cases, 121.

*J. H. Osmer*, for appellees.—The company has no right to appropriate the whole or any part of the street to its own exclusive use, as for side tracks, switches, engine houses, depot buildings and the like, and so destroy the public right of way: Farrand v. Chicago, etc., Ry. Co., 21 Wis. 435; Lance's App., 55 Pa. 16.

The railroad as maintained on the street in question is not for a public use within the meaning of the act of 1849, or the special acts of its incorporation: Edgewood R. R. Company's App., 79 Pa. 257; Sterling's App., 111 Pa. 35; Com. v. Erie & North East R. R. Co., 27 Pa. 339; Mayor of Allegheny v. v. Ohio & Penna. R. Co., 26 Pa. 355.

It is competent for a municipal corporation to prosecute a bill in equity, where the injury is an immediate one to the property of the corporation, as obstructions to a public highway in the municipality, common to the corporators and the citizens of the commonwealth generally: Commissioners v. Long, 1 Parsons's Eq. 143; Bunnell's App., 69 Pa. 59; Mowday v. Moore, 133 Pa. 598.

OPINION BY MR. JUSTICE MITCHELL, November 6, 1899:

The bill and cross-bill were considered together by the court below, and it will be convenient to follow the same plan. The substantial controversy in these appeals arises on the cross-bill.

The facts as found by the court are not in dispute. The Franklin and Jamestown railroad located its tracks on Buffalo street in the city of Franklin in 1867, with the express consent of the city, given by ordinance. It is conceded that the railroad company derived no additional authority from the ordinance, but a reference to it is relevant as bearing on the present equities between the parties. The court found that the entry on the street was made under and in conformity with the provisions of the general railroad act of 1849, and that the tracks were built and have been maintained " as such roads usually are constructed and maintained," with the exception of not now being in good repair. The railroad, however, owing to

the formation of the natural surface of the ground, was partly built on an embankment which interferes with the general use of the street by the public, and there is not sufficient or proper drainage for water under the track, resulting at times in an accumulation on the westerly side.  For this condition of things, however, the court finds that " the railroad company is not alone at fault."   No grade of the street was ever established by the city until after these suits had reached final hearing and the first opinion of the court had been filed.

The facts are found very clearly and explicitly by the learned judge below, and the law in general correctly stated.  But we are of opinion that its application was more severe on the appellant than the equities between the parties will sustain.   The location of the track was with the express consent of the city, and the method of its construction had been acquiesced in for thirty years.   For the present inconvenient condition of the street the court found that the railroad was not alone at fault, and further, that just prior to these suits the railroad proposed " to place the track in proper condition, conforming to the grade of the street as established by the city, at any reasonable time the city might undertake the improvement of the street."   This was substantially all that the equities of the city entitled it to, and the offer should have been accepted.   By its refusal the city made itself responsible for the subsequent litigation, and the relief now awarded to it must follow the general lines of the rejected proposition.   So much of the decree therefore as requires the appellant to grade the entire width of the street, and to proceed in advance of the city's action, must be stricken out.   The city should carry out the grade established by ordinance, and, concurrently or subsequently, the railroad should conform its tracks to such grade.   In regard to drainage the duty is primarily on the city, but such additional work or expense in providing an adequate system as may result from the presence of the tracks in the street should be done or paid for by the railroad.   If the parties cannot agree on this the court may upon supplemental bill determine any questions arising in regard to the matter.

In one other respect the decree is also too broad.   The part of the track in dispute, though still claimed by the railroad to be part of its main line, is now used principally as a switch or

branch to move cars to and from its yard and to receive and deliver freight (and perhaps passengers) to points not easily reachable by the main line. This within reasonable limits is a legitimate use of the road, and the court found that it " would not exceed on the average once in a month." The second paragraph of the decree must therefore be altered so as not to make the prohibition absolute, but only against such use as will unnecessarily and unreasonably occupy the street and interfere with the use thereof by the general public.

The decree is reversed and directed to be modified in accordance with this opinion. Costs of the whole proceedings to be paid by appellees.